## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**LEAH P. HOLLIS**
117 Bellevue Drive
East Fallowfield, PA 19320

        Plaintiff,

v.

**MORGAN STATE UNIVERSITY**
1700 East Cold Spring Lane
Baltimore, Baltimore County,
MD 21251,

**GLORIA GIBSON**, *in her official and individual capacities*,
5500 North St Louis Avenue
Chicago, IL 60625,

**GLENDA PRIME**, *in her official and individual capacities*,
1700 East Cold Spring Lane
Baltimore, Baltimore County,
MD 21251,

**CAROLYN ANDERSON**, *in her official and individual capacities*,
1700 East Cold Spring Lane
Baltimore, Baltimore County,
MD 21251,

**MYRTLE DORSEY**, *in her official and individual capacities*,
1700 East Cold Spring Lane
Baltimore, Baltimore County,
MD 21251,

and

**DAVID WILSON**, *in his official and individual capacities*,
1700 East Cold Spring Lane
Baltimore, Baltimore County,
MD 21251,

        Defendants.

Civil Action No. _____

**COMPLAINT**

**JURY TRIAL DEMANDED**

## COMPLAINT

## I.   NATURE OF ACTION

Plaintiff, Dr. Leah Hollis files this action for declaratory, injunctive, and monetary relief against her employer, Morgan State University (Morgan State), and Morgan State employees Gloria Gibson, Glenda Prime, Carolyn Anderson, Myrtle Dorsey, and David Wilson. Defendants' past, present, and continuing actions violate federal and state law, including Title VII of the Civil Rights Act of 1964, the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, the Equal Pay Act of 1963, Title IX of the Education Amendments of 1972, the Family and Medical Leave Act of 1993, and Maryland state law.

For years, and continuing as of the filing of this complaint, Morgan State paid Dr. Hollis tens of thousands of dollars less than her male colleagues with inferior qualifications and experience in scholarship and teaching. When she complained about her unequal pay, Morgan State retaliated against her, continued to prop up its discriminatory pay structure, and turned a blind eye to the discrimination and harassment Dr. Hollis endured and continues to endure at the hands of Morgan State employees Glenda Prime, Carolyn Anderson, and Myrtle Dorsey.

1.      Dr. Hollis is a professional educator. She is a black female professor who has worked in the field of college student education for over two decades, including 16 years of teaching experience at the university level. Nevertheless, she has been—and remains—the lowest paid professor in her department, despite credentials that parallel or exceed those of her male colleagues.

2.      Dr. Hollis's extensive academic scholarship includes six books, dozens of publications, and countless speaking engagements. Her scholarship examines workplace bullying in higher education, including how leadership influences and exacerbates workplace bullying and its disproportionate impact on women, communities of color, and LGBTQ persons, among others. Given Morgan State's stated commitment to social justice and civil rights, Dr. Hollis was pleased to seek employment at a public university with this mission. After enduring years of harassment and unequal pay, Dr. Hollis's decision to file this complaint is driven by her commitment to her anti-bullying research and enforcing civil rights law.

3.      In 2014, Morgan State hired Dr. Hollis as an Assistant Professor to teach in the Community College Leadership program, which is in the School of Education and Urban Studies under the Department of Advanced Studies, Leadership & Policy. Morgan State, through Department Chair Glenda Prime, hired Dr. Hollis at a non-negotiable annual salary of $60,000—significantly lower than that of her similarly situated male counterparts. After five years, Dr. Hollis is a tenured Associate Professor with an annual salary of $63,000. The $3,000 increase reflects a standard $1,000 cost-of-living adjustment and a $2,000 raise for obtaining tenure in 2019.

4.      Morgan State granted Dr. Hollis tenure only after she filed a complaint to the U.S. Equal Employment Opportunity Commission (EEOC).

5.      On April 11, 2019, the EEOC issued a determination letter finding cause that Morgan State subjected Dr. Hollis to unequal pay because of her sex and retaliated against her by, among other things, denying Dr. Hollis tenure and promotion in 2017, converted her from a tenure-track to an at-will employee, and refusing to investigate her

internal complaint to the Morgan State Office of Diversity and Equal Employment Opportunity (EEO).

6.      Since 2014, as a result of Morgan State and Defendants' actions, Dr. Hollis has suffered considerable financial and emotional damages.

## II.  JURISDICTION AND VENUE

7.      This Court has jurisdiction over Dr. Hollis's federal claims under 28 U.S.C. §§ 1331 and 1343(a)(4) and 42 U.S.C. § 2000e-5(f) and over Dr. Hollis's supplemental state law claims under 28 U.S.C. § 1367(a). This Court also has jurisdiction under 28 U.S.C. § 1332 because the claims are between citizens of different states and the amount in controversy exceeds $75,000.

8.      Dr. Hollis has exhausted the remedies available to her, as set forth in Title VII and Maryland state law, by filing a timely charge with the EEOC on September 27, 2017, which was cross-filed with the Maryland Commission on Civil Rights. Dr. Hollis also filed a complaint with the U.S. Department of Labor to enforce her FMLA rights. In Spring 2019, the EEOC issued a determination letter finding cause for unequal pay and retaliation and referred the case to the U.S. Department of Justice (DOJ). On September 20, 2019, the DOJ issued a right to sue letter. Dr. Hollis files this action within 90 days of her receipt of the notice of right to sue from the DOJ and within two years of the receipt of notice of right to sue from the Department of Labor.

9.      Venue is proper in this Court because Defendants' unlawful actions were committed within the State of Maryland and Defendants Morgan State, Glenda Prime, Carolyn Anderson, Myrtle Dorsey, and David Wilson reside in Maryland. Defendant

Gloria Gibson has relocated to the State of Illinois, but her relevant conduct took place in Maryland when she resided there.

## III.    PARTIES

10.    Plaintiff Dr. Hollis is a black female professor who currently works for Morgan State. She resides in Pennsylvania.

11.    Defendant Morgan State is a public urban research university located in Baltimore. It has more than 100 employees. It is a historically black college and university (HBCU) and doctoral research institution. Morgan State is a resident of Maryland.

12.    Morgan State is an "employer" under Title VII, the Equal Pay Act, Title IX, the FMLA, and Maryland state law.

13.    At all relevant times, Defendant Gloria Gibson (Provost Gibson) was acting under color of state law in her capacity as Morgan State's Provost and Senior Vice President of Academic Affairs. Provost Gibson resides in Illinois. Plaintiff sues Provost Gibson in her official and individual capacities.

14.    At all relevant times, Defendant Glenda Prime was acting under color of state law in her capacity as a Department Chair of Morgan State's Department of Advanced Studies, Leadership and Policy (the Department) and later Dean of the School of Education and Urban Studies. Dr. Prime resides in Maryland. Plaintiff sues Dr. Prime in her official and individual capacities.

15.    At all relevant times, Defendant Carolyn Anderson was acting under color of state law in her capacity as a Program Director of Morgan State's Community College Leadership Program (the Program) in the Department, and later as the interim chair of the

Department. Dr. Anderson resides in Maryland. Plaintiff sues Dr. Anderson in her official and individual capacities.

16.     At all relevant times, Defendant Myrtle Dorsey was acting under color of state law in her capacity as a Program Director of the Program. Dr. Dorsey resides in Maryland. Plaintiff sues Dr. Dorsey in her official and individual capacities.

17.     At all relevant times, Defendant David Wilson (President Wilson) was acting under color of state law in his capacity as President of Morgan State. President Wilson resides in Maryland. Plaintiff sues President Wilson in his official and individual capacities.

## IV.  FACTS

18.     Dr. Hollis is a black female professor who has worked in higher education for over two decades. She has served in a succession of academic roles of increasing responsibility and prestige. Morgan State and Defendants have interfered with and tarnished her career by subjecting her to sex discrimination, unequal pay, harassment, and retaliation.

### *Plaintiff's Hiring at Morgan State*

19.     In 2013, Morgan State posted a job opening for an assistant, associate, or full professor in the Program. Dr. Hollis met all the prerequisite qualifications, which included a specialization in community college leadership or higher education administration and graduate-level teaching experience. Among other positions, Dr. Hollis had served as the Director of Academic Advising for the Community College of Philadelphia. She had been teaching doctoral students since 2004 and had chaired or served on ten dissertation committees and, therefore, possessed the requisite graduate-level

experience. She held certifications in seven areas of higher education management from Harvard University, Stanford University, and Cornell University.

20.     In 2014, Morgan State offered Dr. Hollis the position. At the time of hire, Dr. Hollis asked Dr. Prime if an annual salary of $60,000 was the best offer for the position. Dr. Prime told Dr. Hollis they could not offer a higher salary. Ultimately, Dr. Hollis accepted the position at a salary of $60,000.

21.     In Fall 2014, Dr. Hollis began working at Morgan State as a tenure-track Assistant Professor with associate faculty membership status on a renewable three-year appointment.

### *Unequal Pay Practices at Morgan State*

22.     Morgan State has paid Dr. Hollis significantly less than similarly situated male comparators, and continues to pay her significantly less.

23.     The gender pay inequity in Dr. Hollis's Department is systemic and especially egregious.

24.     At the time of hire, Dr. Hollis's credentials exceeded her male comparators in all material respects. Dr. Hollis had ten years of teaching experience at the doctoral level and had chaired several dissertation committees. Among other credentials, Dr. Hollis had authored three and co-authored a fourth book. Her academic scholarship included several publications and peer-reviewed articles, a peer-reviewed book chapter, and dozens of invited talks and conferences regarding her scholarship.

25.     In 2010, Morgan State hired Gerald Shockley, a male, at the rank of Associate Professor. He had eight years of teaching experience, including one year at the associate professor level. He had authored six, and co-authored three, scholarly articles,

three book chapters, and one book. His annual salary at hiring was $85,000. When he left Morgan State in 2015, he was earning an annual salary $96,000.

26.    In 2012, Morgan State hired C. Sean Robinson, a male, at the rank of Associate Professor at a starting annual salary of $80,000. At the time of his hire in 2012, Dr. Robinson had eight years' prior teaching experience and had authored four, and co-authored two, scholarly articles. Dr. Robinson also had experience in higher education administration and had chaired several dissertation committees. However, he had less teaching experience and a shorter publishing history than Dr. Hollis. As of 2019, Morgan State paid Dr. Hollis, Associate Professor, an annual salary of $63,000 and Dr. Robinson, also an Associate Professor, an annual salary of $93,000.

27.    In 2014, the same year Morgan State hired Dr. Hollis at an annual salary of $60,000, Morgan State hired Needham Gulley, a male, at an annual salary of $63,000. At the time of hire, he had no full-time teaching experience, had authored four scholarly publications, and had co-authored a single publication on community colleges. Although he had less teaching experience and a significantly shorter publishing history, Morgan State paid Dr. Gulley more than Dr. Hollis and provided him other more advantageous material terms, such as release time (a reduced workload) and a private office in his first term. By comparison, Dr. Hollis was assigned an overloaded teaching schedule, a shared office, and a lower annual salary.

28.    In Fall 2016, Russell Davis, a male lecturer working at Morgan State, was promoted to the position of tenure-track Assistant Professor in the Department at a starting annual salary of $65,000. This was $5,000 more than Dr. Hollis's annual salary at the time. In 2016, Dr. Davis had approximately nine years of teaching experience, including two

years as an adjunct professor. His scholarship included three publications, for each of which Dr. Hollis was a co-author or editor.

29.    In Spring 2016, the Department hired Omari Jackson, a male, as an Assistant Professor at an annual salary of $65,000. At hire, Dr. Jackson had co-authored a single peer-reviewed article and one book chapter. In 2016, the Department also hired Uttam Gaulee, a male, as an Assistant Professor at an annual salary of $65,000. In 2014 the Department hired a lecturer, Wilbur Hicks. His annual salary for the 2018-2019 academic year was $66,000, which was $5,000 more than Dr. Hollis's annual salary at the time. Although Mr. Hicks held a Juris Doctorate, he had not completed an earned doctorate (a graduate program in which he conducted graduate research), and was therefore not qualified to chair dissertations or lead empirical research as required by graduate faculty positions.

30.    In August 2017, Morgan State hired Krishna Bista, a male, as a non-tenure track Associate Professor (at time of hire) in the same Department as Dr. Hollis at a starting annual salary of $71,000. Since arriving at Morgan State, Dr. Bista has produced scholarship of similar quality to Dr. Hollis's scholarship, at a similar productivity level. Despite Dr. Hollis's equivalent qualifications and experience, Morgan State hired Dr. Bista at a higher rank and salary.

31.    As reflected in **Table 1**, every male comparator in the Department earns more than Dr. Hollis. Dr. Hollis does substantially equal or greater work under similar working conditions, requiring substantially equal or greater skill, effort, and responsibility as that required of the male professors in the Department.

**Table 1**

| Name | Salary | Rank | Hire Date |
|------|--------|------|-----------|
| Leah Hollis (female) | $61,000 | Associate Professor | Aug. 20, 2014 |
| Needham Gulley (male) | $63,000 | Assistant Professor | Aug. 1, 2014 |
| Omari Jackson (male) | $65,000 | Assistant Professor | Aug. 10, 2016 |
| Uttam Gaulee (male) | $65,000 | Associate Professor | Aug. 25, 2016 |
| Russell Davis (male) | $66,000 | Assistant Professor | Aug. 20, 2012 |
| Wilbur Hicks (male) | $66,000 | Lecturer | Sept. 2014 |
| Krishna Bista (male) | $71,000 | Associate Professor | Aug. 9, 2017 |
| Benjamin Welsh (male) | $82,000 | Associate Professor | Jan. 4, 2009 |
| C. Sean Robinson (male) | $93,000 | Associate Professor | Aug. 22, 2012 |
| Gerald Shockley (male) | $96,000 | Associate Professor | Approx. Fall 2010 |

***Contract Renewal and First Application for Tenure***

32.     At hiring, Dr. Hollis acknowledged receipt of the Morgan State Faculty Handbook (2009 version) by signing the cover page. The Faculty Handbook includes Morgan State's Policy on Appointment, Promotion, and Tenure (Tenure Policy). The Tenure Policy sets the tenure review schedule for assistant professors. It includes a chart showing that promotion and tenure applications are mandatory only in the fifth year (for tenure-track professors) and optional in all preceding years. In other words, Morgan State's Tenure Policy is that an assistant professor may apply for tenure during the second, third, and fourth years on faculty.

33.     Moreover, the Tenure Policy imposes (1) a mandatory review process and (2) a final notice by the end of the professor's second year of the decision to either (a) renew a professor for a second three-year term or (b) terminate employment. Timely notice is critical to provide professors sufficient notice to find alternative employment.

34.     Throughout Dr. Hollis's employment, Morgan State has consistently failed to adhere to its Tenure Policy, making it virtually impossible for Dr. Hollis to be promoted.

35.     On April 9, 2015, Dr. Hollis submitted her 187-page, first-year dossier of relevant scholarship to Dr. Prime during a performance evaluation meeting. Dr. Hollis submitted the dossier so that Dr. Prime would review it, under the Tenure Policy, to determine whether Dr. Hollis would be renewed for a second three-year appointment.

36.     Upon information and belief, Dr. Hollis's first-year dossier was suppressed by Morgan State and by Dr. Prime, and was never considered in deciding whether Dr. Hollis should be given a second three-year appointment. By the end of Dr. Hollis's second year, June 30, 2016, Dr. Hollis had not received notice that she would be terminated at the end of her first three-year term, nor had she received notice that she would be renewed for her second three-year appointment, in violation of the Tenure Policy.

37.     In September 2016, the start of Dr. Hollis's third academic year, Dr. Hollis applied for tenure and promotion. Dr. Hollis's application included a dossier clearly marked for tenure and promotion to associate professor, as distinct from the submission of her first-year dossier.

38.     In late 2016, faculty in the Department encouraged Dr. Hollis to apply for the open position of Director of the Community College Leadership Doctoral Program (CCLDP). At the time, Dr. Anderson was the interim director.

39.     On May 9, 2017, Dr. Hollis applied for the CCLDP Director position. The preferred qualifications included a track record of teaching, research, and service suitable for appointment at the level of full professor. Dr. Hollis met all qualifications for the position.

40.     On May 24, 2017, Dr. Hollis received an email with an attached letter dated May 17, 2017 from Provost Gibson. Provost Gibson's letter denied Dr. Hollis tenure, but extended the time for Dr. Hollis to reapply for tenure to September 2017. The reasons

stated for the extension were to allow Dr. Hollis additional time to strengthen her dossier and meet the criteria of "substantial professional achievement."

41.    Dr. Hollis submitted a timely appeal, highlighting Morgan State's failure to evaluate her teaching as required by the Tenure Policy. Dr. Hollis also expressed concern that her dossier was deemed "less than substantial" notwithstanding (a) a peer-reviewed book, (b) a higher *h*-index factor[1] than many of the tenured associate or full professors, and (c) Dr. Hollis's designation in the Dean's annual report as author or co-author of one-fourth of the Department's publications.

42.    On May 26, 2017, President Wilson sent Dr. Hollis an email with an attached letter dated May 24, 2017.[2] In the letter, President Wilson reiterated Morgan State's offer to allow Dr. Hollis to reapply for tenure and threatened Dr. Hollis that if she refused to accept the offer, her application for promotion would be denied and her appointment terminated effective June 2018. A termination date of June 2018, effectively reducing Dr. Hollis's tenure clock by two years and violated the Tenure Policy.

43.    On May 30, 2017, Dr. Hollis submitted another appeal after receiving President Wilson's decision, again citing procedural error (failure to evaluate her teaching as required by the Tenure Policy) and stating that the tenure decision reflected gender discrimination against her.

---

[1] The *h*-index is a commonly recognized "quantitative metric based on analysis of [an author's] publication data using publications and citations to provide 'an estimate of the importance, significance, and broad impact'" of a scientist or scholar's cumulative research contribution. *Tools for Authors: What is the h index?*, BERNARD BECKER MED. LIBRARY (Oct. 31, 2019), https://beckerguides.wustl.edu/authors/hindex.
[2] The letter was backdated and sent after standard working hours before a holiday weekend. This effectively cut Dr. Hollis's appeal window in half.

44.     In June 2017, Provost Gibson spoke with Dr. Hollis seeking clarification of Dr. Hollis's application and dossier submission for tenure and promotion. Notwithstanding that her dossier was clearly marked, Provost Gibson again questioned Dr. Hollis about the Fall 2016 submission. Dr. Hollis reiterated that the submission was a tenure dossier. All the facts and circumstances strongly suggested that Provost Gibson had not even reviewed the application for tenure and promotion.

45.     On June 21, 2017, Provost Gibson offered to continue Dr. Hollis in her tenure-track position on the condition that Dr. Hollis agreed to resubmit her dossier and apply for tenure by Fall 2018. However, because this request did not comply with the Tenure Policy for tenure applications and failed to acknowledge the procedural errors complained of, Dr. Hollis did not agree to forgo her right to appeal.

46.     On June 26, 2017, Dr. Hollis appealed the decision to extend her tenure process and decision, again citing the failure to evaluate her teaching as required, gender discrimination, and unequal pay. Dr. Hollis identified Dr. Gulley and Dr. Davis as examples of male comparators who were paid more than she was, despite having the same position (Assistant Professor) and that she was at least as qualified as them. In her appeal, Dr. Hollis also attached a chart showing that two Associate Professors at the time (Benjamin Welsh, $81,000, and Dr. Robinson, $93,000) made more than two comparable female Associate Professors (Robin Spaid, $76,000, and Roni Ellington, $78,000).

47.     By August 24, 2017, Morgan State and Defendants President Wilson and Provost Gibson had not decided Dr. Hollis's appeal. That day, Provost Gibson sent an email to Dr. Hollis in which Dr. Gibson (a) apologized for the delayed response, (b) acknowledged Dr. Hollis's June 26, 2017 appeal to President Wilson of Dr. Hollis's tenure/promotion decision, (c) stated her intention to submit Dr. Hollis's promotion and

tenure packet to the Promotion & Tenure Grievance Appeals Committee (the Committee) the following week, (d) informed Dr. Hollis that she would send an email confirming that Dr. Hollis's packet was submitted to the Committee, and (e) advised Dr. Hollis that she would receive official notice when the Committee convened. By the end of August, Morgan State and Defendants President Wilson and Provost Gibson did not notify Dr. Hollis that the Committee convened or that her June 26 appeal had been reviewed.

48.     In Fall 2017, Morgan State assigned Dr. Hollis graduate classes for that semester, and she continued to work with doctoral students. She also wrote comprehensive exams for doctoral students, signaling the beginning of her second third-year contract and her continuation as a member of the graduate faculty, despite that Morgan State never gave Dr. Hollis a formal decision on her tenure appeal or termination, in violation of the Tenure Policy.

### *Denial of Promotion and Filing of EEOC Charge*

49.     On September 7, 2017, the search committee for the CCLDP Director position met for the first time. On September 8, Dr. Prime notified Dr. Hollis that she was no longer being considered for the position of CCLDP Director.

50.     Neither Morgan State nor Dr. Prime provided an explanation. Ultimately, neither of the two finalists for Director (Dr. Dorsey and Dr. Craig Follins) met the requirement for full professor because neither had a publication or research record. By comparison, Dr. Hollis had an extensive publication and research record. The successful candidate, Dr. Dorsey, had no graduate teaching experience and had never supervised a dissertation committee.

51.     In light of Morgan State's pattern of unequal treatment, Dr. Hollis filed an EEOC charge on September 27, 2017. Dr. Hollis provided a copy of the charge and a Morgan State Discrimination Complaint Form to Tanyka Barber, Morgan State's Director of Diversity and EEO and Title IX Coordinator. Ms. Barber informed Dr. Hollis that Morgan State would not internally investigate Dr. Hollis's discrimination complaint because Dr. Hollis had filed an EEOC charge.

52.     Upon information and belief, Professor Catherine Martin also filed an internal Morgan State EEO complaint against Dr. Prime in Fall 2017. Upon information and belief, the Morgan State EEO office did not act. In Fall 2017, Dr. Martin also filed an EEOC complaint for equal pay violations. Upon information and belief, Morgan State ultimately gave Catherine Martin a raise in response to her complaint.

### *Morgan State's Retaliation*

53.     On October 25, 2017, Dr. Hollis sent an email to Provost Gibson with a copy to President Wilson. Dr. Hollis's email reiterated that her teaching had not been evaluated at the department/college level in the year she applied for tenure, as required by Morgan State's Tenure Policy.

54.     On December 12, 2017, approximately six months after Dr. Hollis submitted her appeal, President Wilson notified Dr. Hollis that her tenure application had been submitted late and was not eligible for consideration, and that all earlier reviews conducted were void as to Dr. Hollis for failure to comply with Tenure Policy.

55.     In late November 2017, Dr. Anderson, operating outside of Morgan State policy, insisted on attending Dr. Hollis's dissertation proposal defenses with students. Dr. Anderson also reneged on a 2018 dissertation approval for one of Dr. Hollis's students.

These actions by Dr. Anderson were outside of Morgan State's standard procedures for dissertation proposals and interfered with Dr. Hollis's academic freedom and ability to complete her job duties (one third of which is teaching and reviewing dissertations).

56.    On December 18, 2017, Dr. Hollis met with Provost Gibson at Provost Gibson's request. Provost Gibson began the meeting by acknowledging Dr. Hollis's gender discrimination and unequal pay claims. Provost Gibson gave Dr. Hollis a letter about what she called "next steps."

57.    The letter informed Dr. Hollis that Morgan State was converting her employment from tenure-track to at-will, ostensibly (and incorrectly) because Dr. Hollis had not submitted her first-year dossier in 2015. According to the Tenure Policy, as an associate member of the graduate faculty, Dr. Hollis could only be removed for (a) failure to perform her duties in good faith, (b) dereliction in teaching and/or committee work, or (c) evidence of academic or professional misconduct. Provost Gibson's letter did not cite any of these reasons and instead wrongfully removed Dr. Hollis as an associate member of the graduate faculty.

### *FMLA Protected Leave, Retaliation, and Harassment*

58.    On January 10, 2018, Dr. Hollis notified Morgan State of her need for FMLA leave to care for her ailing mother. Morgan State's human resources representative, Armada Grant, approved Dr. Hollis's leave within 24 hours of her request, with leave effective January 22, 2018. Also on January 10, 2018, Dr. Hollis informed Dr. Anderson and Dr. Prime of her FMLA request (and Grant's approval of the request). As soon as Dr. Hollis received approval for her FMLA leave, she made arrangements to exchange classes with a colleague, but Dr. Prime immediately rejected this constructive suggestion.

59.    On January 18, 2018, Dr. Anderson sent an email informing faculty to contact Dr. Anderson directly to express interest in teaching online summer classes. Dr. Hollis was excluded from the email.

60.    Nonetheless, Dr. Hollis learned of the request from Dr. Anderson and sent her an email the next day, expressing her interest in teaching two online sections of Introduction to Qualitative Research, which she had taught every summer semester for the three prior summers (2015, 2016, and 2017). In the past, Dr. Hollis had earned about $3,800 per section for teaching Introduction to Qualitative Research. Dr. Hollis also highlighted Dr. Anderson's responsibilities under the FMLA, namely that Dr. Hollis must be returned to the same position and financial benefit as before her FMLA leave began. Dr. Anderson offered Dr. Hollis only one online section of Introduction to Qualitative Research for the 2018 summer term.

61.    Dr. Anderson also stated that the Department needed to use Dr. Hollis's office area while she was on FMLA leave and asked Dr. Hollis to clear her desk. At the time of this request, Dr. Hollis was already in Western Pennsylvania, more than 200 miles from Morgan State, taking care of her mother. Morgan State cleared all of Dr. Hollis's personal items, papers, and office decor from her office. These actions by Morgan State and Dr. Anderson humiliated Dr. Hollis and sent a chilling message to Dr. Hollis and her colleagues that she was effectively terminated. Dr. Hollis received emails and calls from faculty members, asking if she had been terminated.

62.    Dr. Hollis officially began her FMLA leave on January 22, 2018. During this period, Dr. Hollis was required to check with Morgan State Human Resources Department (HR) every 30 days.

63.     In February 2018, while on FMLA leave, Dr. Hollis resubmitted the 2015 dossier for her second third-year review at Provost Gibson's request. These materials reflected Dr. Hollis's work product for the entire period she was at Morgan State, and totaled over 1,400 pages.

64.     A month into her FMLA leave, Provost Gibson sent an email to Dr. Hollis, acknowledging receipt of the dossier and that Dr. Hollis was currently on FMLA leave. In her email, Provost Gibson insisted that Dr. Hollis needed to complete an additional application form while on leave, in addition to the dossier, for her second third-year review. Provost Gibson continued to harass Dr. Hollis, writing her six different times requesting the new application. All evidence suggested Provost Gibson was imposing an application process on Dr. Hollis that had not been required in April 2015 when Dr. Hollis originally submitted her first-year dossier.[3]

65.     On March 8, 2018, Dr. Hollis had a 30-day check in with HR regarding her FMLA leave. At this time, Dr. Hollis's mother was recovering from surgery and still under Dr. Hollis's care. Dr. Hollis alerted HR during this meeting that Provost Gibson was fabricating an application process not available in April 2015.

66.     On or about April 2, 2018, Dr. Hollis's FMLA leave ended, and she returned to work. Dr. Dorsey did not provide Dr. Hollis a teaching assignment for the remaining weeks of the Spring 2018 semester. Instead, Dr. Dorsey orally told Dr. Hollis that she would be put on a teaching hiatus and would be required to produce daily/weekly reports

---

[3] Relevant here is the original Tenure Policy (2009 version). Morgan State updated the Tenure Policy, effective November 7, 2017 (2017 version) to require, among other things, an additional application form with dossier submission. This form was only available from the provost. The circumstances strongly suggested to Dr. Hollis that Defendants maliciously enforced the new policy retroactively to Dr. Hollis's disadvantage.

to hold Dr. Hollis accountable for all of her activities, including her supervision of doctoral students. During this same meeting, Dr. Hollis asked Dr. Dorsey about her summer school assignments, to which Dr. Dorsey replied that she understood that FMLA required that Dr. Hollis have a job when she returned, but not the same job.

67.     Upon information and belief, Morgan State and Dr. Dorsey had not required any Department faculty on a teaching hiatus to prepare similar daily/weekly reports. Dr. Tiffany Boykin, an adjunct faculty member who covered Dr. Hollis's doctoral students while she was on FMLA leave, was required to submit only a one-page report, reflecting eight to nine weeks of interaction with Dr. Hollis's students. Dr. Hollis complied with Dr. Dorsey's request and created and submitted the daily/weekly reports for the last five weeks of the 2018 academic term.

68.     When Dr. Hollis returned from FMLA leave, she learned that her requests to teach both Introduction to Qualitative Research classes had been denied by Dr. Anderson. The classes were given to other professors. As a result, Dr. Hollis was only allowed to teach one online section of Introduction to Qualitative Research in Summer 2018. This reduced Dr. Hollis's salary by about $5,343 compared to the previous three years' summer earnings. As a result of Morgan State's failure to assign two fully enrolled sections of the course, Dr. Hollis lost significant pay.

### *Internal EEO Complaints and Continued FMLA Retaliation*

69.     On April 4, 2018, Dr. Hollis filed a complaint with Morgan State's Diversity and EEO Office alleging FMLA retaliation, Title IX infractions for gender discrimination, harassment, and hostile work environment. Ms. Barber purported to investigate, but Ms. Barber never made findings regarding the investigation. Interim EEO Director Sally Swann

was made aware of Dr. Hollis's complaints in February 2019, over ten months after Dr. Hollis's April and May 2018 complaints, but she did not take any remedial action.

70.    In or around the third week of April 2018, Dr. Hollis's colleague, J.D.,[4] submitted a written complaint to Dr. Dorsey and Dr. Anderson about the continuing gender discrimination faced by Dr. Hollis and a female colleague, Dr. Rosemary Gillett-Karam. J.D. was fired by Dr. Anderson within two days following this submission, effective June 1, 2018, cutting J.D.'s contract short by four months.

71.    Through Fall 2018, Dr. Hollis continued to be subjected to harassment, which Ms. Barber refused to address. Delays from Dr. Anderson in approving Dr. Hollis's teaching content interfered with Dr. Hollis's work productivity and academic freedom for classes taught in the Spring 2019 term.

72.    In early February 2019, Dr. Hollis wrote to Dr. Dorsey to request that Dr. Hollis's summer course schedule be restored to what it was before her FMLA leave. Dr. Dorsey replied that she would assign courses on a first-come-first-served basis, reflecting a new procedure. Dr. Hollis requested her two summer classes via email on two separate occasions on February 11 and 14, 2019. Dr. Dorsey then refused to accept her written requests and insisted that all requests be made in person. Dr. Hollis traveled to Baltimore to meet with Dr. Dorsey and sign up in person for her requested classes. In response, Dr. Dorsey mocked Dr. Hollis, stating that she had wasted all her energy on nothing, and that the two classes Dr. Hollis wanted were available. Despite this, in March 2019, Dr. Hollis discovered that she was still assigned only one summer course, as reflected in the online

---

[4] For protection of this colleague, this Complaint uses the colleague's initials.

Morgan State registration system. The second course that Dr. Hollis had requested was assigned to Dr. Bista, a male.

73.     In Spring 2019, Dr. Hollis wrote Dr. Dorsey specifically citing requirements under the FMLA to restore Dr. Hollis's summer courses and the financial hardship caused by the unanticipated and retaliatory reduction of her summer course load. However, Dr. Dorsey refused to restore Dr. Hollis's classes, stating via email on March 27, 2019 that she did not need to respond to Dr. Hollis and alleging that Dr. Bista had requested his summer classes before Dr. Hollis.

74.     Upon information and belief, Defendants' failure to restore Dr. Hollis's summer courses is a continuing act of FMLA harassment and retaliation against Dr. Hollis by Dr. Dorsey. Dr. Hollis reported these continuing violations to Ms. Swann in February 2019. Ms. Swann failed to investigate or render a finding from data previously collected by Ms. Barber in April and May 2018. Only when Dr. Hollis notified upper management and contacted the interim Provost, Dr. McPhatter, was her second course restored.

***Continuing Workplace Harassment and Interference with Job Duties***

75.     Morgan State allows faculty to travel to conferences and seek reimbursement for those funds. Upon information and belief, Morgan State continually awards funding to male colleagues, while denying Dr. Hollis's requests.

76.     In the Spring of 2019, Dr. Hollis attended an international research conference on behalf of Morgan State. By this time, Dr. Anderson had been promoted to interim Chair of the Department. Dr. Hollis independently secured approximately $1,500 in reimbursement from another department's budget. Her travel costs exceeded that amount. When Dr. Hollis presented the forms for approval of the $1,5000 reimbursement

to Dr. Anderson, Dr. Anderson congratulated Dr. Hollis on acceptance to the conference but refused to provide her signature. This was despite that the reimbursement was being provided from another department's budget.

77.     Dr. Hollis continued to travel to national and international conferences to advance her career at her own expense, despite Morgan State's refusal to provide reimbursement. In September 2019, following a conference, Dr. Hollis requested $300 in travel reimbursement—reflecting an amount that Dr. Dorsey had granted twice to male faculty over the same time period. Dr. Prime answered only after Dr. Hollis copied the newly appointed Provost, Lesia Crumpton-Young. Dr. Prime continued to defer to Dr. Dorsey, who has continually denied travel funds to Dr. Hollis and refused to clarify policies and procedures despite Dr. Hollis's requests.

78.     After six requests, in October 2019, Dr. Dorsey finally awarded Dr. Hollis $300 in travel reimbursement funds, less than one-fourth of the funds Dr. Hollis initially requested. Dr. Dorsey's practices obstruct Dr. Hollis's work productivity and ability to fulfill her job duties and cause significant financial loss to Dr. Hollis.

### *Application for Full Professorship, Continuing Pay Disparity, and Failure to Transfer*

79.     In Spring 2019, under interim Provost Dr. McPhatter, Morgan State awarded Dr. Hollis tenure to Associate Professor. Morgan State never addressed its noncompliance with its own tenure and promotion procedures. Upon information and belief, Dr. Prime (then Department Chair) did not support Dr. Hollis's application for tenure, while all other voting faculty members supported Dr. Hollis's application.

80.     Dr. Hollis, a tenured Associate Professor with national and international recognition, is paid less than every single male in the Department, including those at a

lower rank. Dr. Hollis makes an annual salary of $63,000, the same amount that male colleague, Dr. Gulley earned in his first term as an Assistant Professor. Dr. Hollis continues to be paid less than current male Assistant Professors, Dr. Davis, who is paid an annual salary of $66,000, and Dr. Jackson, who is paid an annual salary of $65,000. Dr. Hollis is also paid less than lecturer Wilbur Hicks, who is paid an annual salary of $66,000.

81.     On September 13, 2019, Dr. Hollis applied for promotion to Full Professor. Dr. Hollis's scholarly contributes are similar to or exceed other Full Professors in the School of Education and Urban Studies at Morgan State. According to Google Scholar, Dr. Hollis is ranked in the top 30 of all Morgan State professors for number of citations, regardless of discipline. Under Dr. Prime's leadership, and as with Dr. Hollis's 2016 and 2018 applications for tenure and promotion, the Department again failed to evaluate Dr. Hollis's teaching during her 2019 application process, as required by the Tenure Policy.

82.     On September 20, 2019, Dr. Hollis applied for transfer to a faculty position in the Higher Education and Student Affairs Administration Program in the Department. The position was advertised as "open rank" and sought candidates at the Assistant or Associate position at a starting salary of between $70,000-90,000, to begin in January or August 2020. Dr. Robinson, Coordinator for the program, encouraged Dr. Hollis to apply.

83.     Dr. Hollis met all listed qualifications and had the necessary experience and skills for the position, but was denied an opportunity to interview for the position. Dr. Hollis also met the preferred qualifications listed, with 17 years of student affairs experience and expertise in quantitative research methods. In an email response, Dr. Robinson confirmed that Dr. Hollis was qualified for the advertised position, but explained that he was hoping for an "emerging scholar" that could be mentored "up the ranks," despite that the position was advertised as "open rank." The position would have provided

Dr. Hollis some temporary financial relief and removed her from the continuing discrimination and harassment endured by Dr. Hollis within the Community College Leadership Program and under Dr. Dorsey.

84.    Despite Dr. Hollis's continued reporting, documentation, and notice to Morgan State's administration regarding unfair pay practices at Morgan State, to date, six women in the Department of Advanced Studies still receive unequal pay. All of their salaries were set by then Department Chair, Dr. Prime. This suggests that unequal pay practices at Morgan State are an ongoing and systemic problem that Morgan State has failed to address.

85.    Dr. Hollis made Morgan State and Defendants aware of how severely they were underpaying her and requested equal pay. Consistently and willfully ignoring this disparity, Morgan State refused to acknowledge the pay inequality and failed to change her salary. Instead, Morgan State continues to pay Dr. Hollis far below the pay of her male comparators. Upon information and belief, Morgan State's leadership is aware of their unlawful pay promotion and job assignment practices, but has taken no steps to remedy the disparities or their root causes.

86.    Upon information and belief, Morgan State and Defendants were aware of their own misconduct but failed to rectify or stop the discrimination and retaliation. They even actively avoided policy changes necessary to comply with Title VII, Title IX, Equal Pay Act, FMLA, and Maryland state law.

## V.  CLAIMS

## COUNT I – EMPLOYMENT DISCRIMINATION ON THE BASIS OF SEX
### *Title VII*

87.    Plaintiff realleges and incorporates by reference all foregoing allegations.

88.    Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

89.    Dr. Hollis is female and a member of a protected class based on sex.

90.    Dr. Hollis was qualified for the position she has held and for all of the positions she sought.

91.    Morgan State discriminated against Dr. Hollis by treating her less favorably than similarly situated males, including, but not limited to, on the basis of unequal pay, unequal teaching assignments, unequal application of facially neutral policies or practices, and failure to promote or provide tenure because of her sex.

92.    Dr. Hollis's sex was the determining and/or a motivating factor in Defendants' actions.

## COUNT II – EMPLOYMENT DISCRIMINATION ON THE BASIS OF SEX
### *Maryland State Law*

93.    Plaintiff realleges and incorporates by reference all foregoing allegations.

94.    Maryland state law makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of

such individual's race, color, religion, sex, or national origin." Md. Code, State Gov't § 20-606(a).

95.     Dr. Hollis is female and a member of a protected class based on sex.

96.     Dr. Hollis was qualified for the position she has held and for all of the positions she sought.

97.     Morgan State discriminated against Dr. Hollis by treating her less favorably than similarly situated males, including but not limited to on the basis of unequal pay, unequal teaching assignments, unequal application of facially neutral policies or practices, and failure to promote or provide tenure because of her sex.

98.     Dr. Hollis's sex was the determining and/or a motivating factor in Defendants' actions.

## COUNT III – PAY DISCRIMINATION ON THE BASIS OF SEX
### *Equal Pay Act*

99.     Plaintiff realleges and incorporates by reference all foregoing allegations.

100.     The Equal Pay Act makes it unlawful for an employer "to discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which [the employer] pays to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, efforts, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system, (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1).

101.     Morgan State employs Dr. Hollis and male employees in positions as Assistant, Associate, or Full Professor, requiring substantially equal skill, effort, and

responsibility.

102.    Dr. Hollis and similarly situated males in the Department of Advanced Studies in the School of Education and Urban Studies perform their jobs under similar working conditions.

103.    Dr. Hollis was—and continues to be—paid a lower wage than the male employees doing substantially equal work.

104.    Defendants' violation of the Equal Pay Act was knowing, willful, and intentional.

105.    Defendants caused, contributed to, or caused the continuation of wage discrimination based on sex, in violation of the Equal Pay Act.

106.    The differential in pay between male and female employees was not, and is not, based on a bona fide seniority system, a bona fide merit system, or a bona fide system that measures employee earnings by quantity or quality of work, nor was the difference in pay a result of a factor other than sex.

## COUNT IV – PAY DISCRIMINATION ON THE BASIS OF SEX
### *Maryland State Law*

107.    Plaintiff realleges and incorporates by reference all foregoing allegations.

108.    Maryland state law prohibits employers from discriminating against an employee "in any occupation by paying a wage to employees of one sex at a rate less than the rate paid to employees of the opposite sex if both employees work in the same establishment and perform work of comparable character or work on the same operation, in the same business, or of the same type." Md. Code, Lab. & Empl. § 3-304.

109.    Morgan State employs Dr. Hollis and male employees in positions as

Assistant, Associate, or Full Professor, requiring substantially equal skill, effort, and responsibility.

110.    Dr. Hollis was—and continues to be—paid a lower wage than the male employees doing substantially equal work.

111.    Dr. Hollis and similarly situated males perform their work in the same establishment.

112.    Defendants paid Dr. Hollis less than males for performing comparable work.

113.    Defendants' violation of Maryland state law was knowing, willful, and intentional.

114.    Defendants caused, contributed to, or caused the continuation of wage discrimination based on sex, in violation of Maryland state law.

## COUNT V – RETALIATION
### *Title VII*

115.    Plaintiff realleges and incorporates by reference all foregoing allegations.

116.    Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a).

117.    Morgan State and Dr. Hollis have an employer-employee relationship.

118.    Dr. Hollis exercised her Title VII rights by—among other activities—filing a complaint with Morgan State and a charge with the federal EEOC, which was also cross-filed with the Maryland Commission on Civil Rights, alleging sex discrimination and unequal pay and otherwise reporting unequal pay to Morgan State and its agents.

119.    As a result of her protected activity, Defendants subjected Dr. Hollis to retaliation and materially adverse actions, including failing to consider her application for the Director position; unlawfully converting her from tenure-track faculty to an at-will employee; denying her due process; shifting Morgan State's pretextual reason for denying Dr. Hollis's application for tenure and promotion from failure to meet certain eligibility criteria to deeming her ineligible for review because the application was submitted late; and failing to promote Dr. Hollis to a position in the Higher Education program at a higher salary despite meeting the job qualifications.

120.    Morgan State's retaliatory actions were sufficient to deter a reasonable person from engaging in protected activity.

121.    Defendants' acts, failures to act, policies, practices, and unlawful application of those policies and practices described above constitute retaliation in violation of Title VII.

### COUNT VI – RETALIATION
#### *Maryland State Law*

122.    Plaintiff realleges and incorporates by reference all foregoing allegations.

123.    Maryland state law also similarly prohibits employers from discriminating against an employee "because the individual has: (1) opposed any practice prohibited by this subtitle; or (2) made a charge, or participated in any manner in an investigation, proceeding, or hearing under this subtitle." Md. Code, State Gov't § 20-606(f).

124.    Morgan State and Dr. Hollis have an employer-employee relationship.

125.    Dr. Hollis exercised her Title VII rights by—among other activities—filing a complaint with Morgan State and a charge with the federal EEOC, which was also cross-

filed with the Maryland Commission on Civil Rights, alleging sex discrimination and unequal pay and otherwise reporting unequal pay to Morgan State and its agents.

126.    As a result of her protected activity, Defendants subjected Dr. Hollis to retaliation and materially adverse actions, including failing to consider her application for the Director position; unlawfully converting her from tenure-track faculty to an at-will employee; denying her due process; shifting Morgan State's pretextual reason for denying Dr. Hollis's application for tenure and promotion from failure to meet certain eligibility criteria to deeming her ineligible for review because the application was submitted late; and failing to promote Dr. Hollis to a position in the Higher Education program at a higher salary despite meeting the job qualifications.

127.    Morgan State's retaliatory actions were sufficient to deter a reasonable person from engaging in protected activity.

128.    Defendants' acts, failures to act, policies, practices, and unlawful application of those policies and practices described above constitute retaliation in violation of Maryland state law.

### COUNT VII – EMPLOYMENT DISCRIMINATION & RETALIATION ON THE BASIS OF SEX
#### *Title IX of the Education Amendments of 1972*

129.    Plaintiff realleges and incorporates by reference all foregoing allegations.

130.    Title IX of the Education Amendments of 1972 prohibits discrimination in employment, or recruitment, consideration, or selection, under any education program or activity operated by a federal funding recipient. 20 U.S.C. § 1681 *et seq*. Title IX's prohibitions against sex-based discrimination broadly extend to the full range of activities related to the recruitment, evaluation, consideration for and award of tenure, classification,

payment, assignment, retention, or treatment of employees. 34 C.F.R. § 106.51.

131.    Dr. Hollis is female and member of a protected class based on sex.

132.    Morgan State is a public university that receives federal financial assistance.

133.    Morgan State failed to award Dr. Hollis promotion or tenure because of her sex, even though Dr. Hollis was eligible for the promotions and the positions she sought.

134.    Dr. Hollis complained about sex-based discrimination and brought her claims to the attention of Morgan State, including to relevant administrators and Defendants , Provost Gibson, Dr. Prime, Dr. Anderson, Dr. Dorsey, and President Wilson.

135.    Morgan State was aware of Dr. Hollis's protected activity but failed to act to remedy the discrimination, and demonstrated deliberate indifference to, and failed to take reasonable steps to protect, Dr. Hollis's right to be treated equally and not to be subjected to intentional sex discrimination.

136.    Morgan State retaliated against Dr. Hollis because she complained of sex discrimination.

137.    Morgan State caused or contributed to the discrimination based on sex and retaliation in violation of Title IX.

## COUNT VIII – SECTION 1983 EQUAL PROTECTION
### *Section 1983 and the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution*

138.    Plaintiff realleges and incorporates by reference all foregoing allegations.

139.    Section 1983 makes it unlawful for any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and the

laws, shall be liable to the party injured ....” 42 U.S.C. § 1983.

140.    Dr. Hollis sues President Wilson, (former) Provost Gibson (now president of Northeastern Illinois University), (former) Carolyn Anderson (promoted to Department chair in 2019), Myrtle Dorsey, and Glenda Prime (promoted to Dean Prime in 2019) in their individual capacities because each acted under color of state law by, among other things, intentionally discriminating against Dr. Hollis by denying her tenure in 2017 because of Dr. Hollis’s sex, which violates the Equal Protection Clause of the Fourteenth Amendment.

141.    Dr. Hollis sues President Wilson, Provost Gibson, Carolyn Anderson, Myrtle Dorsey, and Glenda Prime because each deprived Dr. Hollis of her right to be treated equally under the Fourteenth Amendment while acting under the color of state law in effecting the aforementioned deprivation, and that deprivation caused Dr. Hollis to sustain damages as stated below.

142.    Plaintiff also sues President Wilson, (former) Provost Gibson, Carolyn Anderson, Myrtle Dorsey, and Glenda Prime in their individual capacities for their unlawful motives or interests in ensuring Dr. Hollis was denied tenure in 2017, conversion and demotion from a contract employee to at-will status, and their callous and deliberate indifference to Dr. Hollis’s rights.

143.    As a direct and proximate result of Defendants’ discriminatory conduct, Dr. Hollis has sustained, and continues to sustain, economic damages and emotional distress, including anxiety, stress, humiliation, and embarrassment.

## COUNT IX – DISCRIMINATORY COMPENSATION PRACTICES
### *Maryland State Law*

144.    Plaintiff realleges and incorporates by reference all foregoing allegations.

145.    The Maryland Code, State Government Article, prohibits employers from discriminating against an employee through adopting, subjecting an individual to, or affecting individuals with the application of, discriminatory compensation decisions, or other practices. Md. Code, State Gov't § 20-607.

146.    The acts, failures to act, practices and policies of Morgan State set forth above constitute discriminatory compensation decisions or practices in violation of Maryland state law.

147.    Defendants subjected Dr. Hollis to a discriminatory compensation practice by underpaying her compared to her similarly situated male comparators and by failing to grant her tenure and to promote her because of her sex.

148.    Defendants further subjected Dr. Hollis to discriminatory compensation decisions and practices by interfering with her course load, delaying payment for her classes in summer 2018, removing her from the contractual direct deposit pay system, and failing to make timely deposits to her retirement fund.

149.    Each discriminatory compensation decision and practice by Defendants resulted wholly from Morgan State's discriminatory compensation practices based on sex and the unequal application of facially neutral policies or practices.

## COUNT X – FAMILY MEDICAL LEAVE ACT
## INTERFERENCE & RETALIATION
### *Family Medical Leave Act*

150.    Plaintiff realleges and incorporates by reference all foregoing allegations.

33

151.    Dr. Hollis is an employee covered by the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601 *et seq.*

152.    Morgan State is an employer that must comply with the FMLA.

153.    In January 2018, Dr. Hollis was entitled to leave under the FMLA. 29 C.F.R. § 825.114.

154.    In 2018, Dr. Hollis gave notice to Defendants of her intention to take FMLA leave.

155.    In 2018, Defendants approved Dr. Hollis's request to take FMLA leave.

156.    In 2018, when Dr. Hollis completed employer-approved FMLA leave, Morgan State failed to restore Dr. Hollis to an equivalent position when she returned from FMLA leave.

157.    Dr. Hollis was entitled to restoration to her position as described in the FMLA and was denied restoration to the same or equivalent position and financial benefits as required by the FMLA. 29 U.S.C. § 2614(1).

158.    When Dr. Hollis engaged in FMLA-protected conduct, Defendants retaliated against Dr. Hollis because of her protected conduct, including refusing to restore her summer classes and subjecting her to unduly burdensome tasks, such as daily/weekly reports, forcing her to resubmit her dossier, and fabricating an application process for Dr. Hollis's summer course requests while she was on FMLA leave to make it more difficult for her to teach summer courses.

159.    The acts, failures to act, and conduct of Morgan State and Defendants as set forth above constitute interference with Dr. Hollis's rights under the FMLA, and retaliation against Dr. Hollis for exercising her rights under the FMLA. Among other things, Defendants retaliated against Dr. Hollis when they engaged in a course of action that, under

the facts and circumstances, strongly suggested that Morgan State and Defendants were in the process of either firing her or trying to force her to resign. These actions included, among other things: delaying payment to Dr. Hollis for her 2018 summer class, removing Dr. Hollis from the contractual direct-deposit pay system, and failing to make timely deposits into her retirement fund.

160.    Dr. Hollis sues Provost Gibson, Carolyn Anderson, Myrtle Dorsey, and Glenda Prime in their official capacities because each qualifies as an "employer" as defined in 29 U.S.C. § 2601. Each interfered with Dr. Hollis's substantive rights and retaliated against Dr. Hollis for exercising her FMLA rights.

## VI.  RELIEF SOUGHT

Plaintiff requests the following relief:

a.      Declaratory relief in the form of a judgment in favor of Dr. Hollis stating that Morgan State unlawfully discriminated against Dr. Hollis, paid Dr. Hollis an unlawfully unequal wage, and unlawfully retaliated against Dr. Hollis for engaging in protected activity, such as reporting gender discrimination and unequal pay, under Title VII, the Equal Pay Act, Title IX, the FMLA, Section 1983, Maryland Equal Pay For Equal Work Act, Md. Code, State Gov't § 20-601 *et seq*., Md. Code, Lab. & Empl. § 3-301 *et seq*., and Md. Code, State Gov't § 20-607;

b.      Tenure and promotion to the position which Dr. Hollis would have had if she had not been unlawfully discriminated and retaliated against, specifically to the rank of Full Professor with an annual salary to which Dr. Hollis is entitled by law;

c.    Back pay, front pay, and damages to compensate Dr. Hollis for the full value of compensation and benefits she would have received had she not been the victim of gender discrimination, and for economic losses and emotional distress suffered as a result of discrimination, retaliation, and discriminatory decisions or practices;

d.    An injunction permanently enjoining Defendants from discriminating or retaliating against Dr. Hollis in any manner that violates Title VII, the Equal Pay Act, Title IX, the FMLA, Equal Protection under Section 1983, the Maryland Equal Pay For Equal Work Act, Md. Code, State Gov't § 20-601 *et seq.*, Md. Code, Lab. & Empl. § 3-301 *et seq.,* and Md. Code, State Gov't § 20-607;

e.    An injunction permanently enjoining the following defendants from participating in the reporting structure or in employment decisions regarding Dr. Hollis: Dr. Prime, Dr. Anderson, and Dr. Dorsey;

f.    An injunction directing Morgan State to document publicly, and in Dr. Hollis's personnel file, that Morgan State failed to grant tenure in 2017 to Dr. Hollis because of her sex;

g.    An injunction requiring Defendants and their agents, employees, and all other persons to develop and implement policies, practices, and procedures that do not discriminate against persons on the basis of gender or violate federal equal pay and discrimination laws and the laws of Maryland; as well as training to adequately institute these policies, practices, and procedures;

h.    Attorney's fees and costs; and

i.    All other appropriate relief.

## VII.  JURY TRIAL

Plaintiff requests a jury trial on all issues triable by jury.

Dated: December 13, 2019        Respectfully submitted,

                                     /s/ Aderson B. Francois
                                    Aderson B. Francois (MD Bar No. 17449)
                                    Georgetown University Law Center
                                    Civil Rights Clinic
                                    600 New Jersey Avenue NW, Suite 352
                                    Washington, DC 20001
                                    (202) 661-6739
                                    aderson.francois@georgetown.edu

                                    *Attorney for Plaintiff*